# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **John M. Dosdall,** | Civil No. 09-1122 (RHK/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Michael J. Astrue,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This litigation comes before the undersigned on the parties' cross motions for summary judgment (Doc. Nos. 6, 8). Amy J. Doll, Esq., is representing plaintiff John Dosdall. Lonnie F. Bryan, Asst. United States Attorney, is representing defendant Michael Astrue, Commissioner of the Social Security Administration (the SSA). The motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1(a).

The SSA granted Mr. Dosdall (Dosdall) disability benefits in January 2004, but reopened the decision in September 2006. After reopening, the SSA determined that Dosdall was engaged in substantial gainful activity through his duties as a board member of the Runestone Telephone Association. For this reason, the SSA ruled that Dosdall was not disabled, reversing its prior decision and terminating benefits. Dosdall challenged this ruling and received a hearing before an Administrative Law Judge (ALJ). By a decision on January 22, 2008, the ALJ upheld the denial of disability benefits.

Dosdall then brought the current action for judicial review. He argues that the SSA did not have reason to reopen its decision, and moreover, that his activities as a board member did

not constitute substantial gainful activity. The parties currently bring cross-motions for summary judgment.

I.  **BACKGROUND**

Dosdall applied for disability benefits in January 2004 after one of his arms was partially amputated. (Tr. at 9, 229.) In reports he submitted with this application, Dosdall disclosed his prior work as a farmer, but he did not mention any corporate board memberships. (Tr. at 232-39, 242.) The SSA granted disability benefits without further proceedings.

For reasons not explained by the record, the SSA started investigating Dosdall in 2006. It apparently received information showing that Dosdall had received significant self-employment income. (*See* Tr. at 223, 225.) In a questionnaire on August 4, 2006, Dosdall disclosed that he received compensation for his work as a board member of the Runestone Telephone Association (RTA). (Tr. at 138, 143-51.)

According to records Dosdall submitted with this questionnaire, the RTA provided him compensation of $11,450 in 2003; $13,724 in 2004; $12,072 in 2005; and $13,412 in 2006. Most of this compensation consisted of health insurance benefits; the remainder was a per-diem for board meeting attendance. (Tr. at 68, 148-51.) Dosdall further disclosed that he had served on the RTA board since 1987 and was reelected to the board, after his impairment occurred, in 2006. (Tr. at 67, 139.)

In a ruling on September 11, 2006, the SSA formally reopened its prior decision to grant disability benefits. It determined that, throughout the period that Dosdall was receiving benefits, he had been engaged in substantial gainful activity. In support of this finding, the SSA observed that Dosdall's average monthly earnings exceeded the regulatory guideline for substantial gainful activity, which was $800 per month in 2003; $810 per month in 2004; $830 per month in 2005;

and $860 per month in 2006. (Tr. at 18, 47.) The SSA concluded that Dosdall was not disabled, denying disability benefits and demanding remittance of prior payments. (Tr. at 17, 44.)

Dosdall requested review of this decision. After several administrative delays that are not material to the record here, the matter was heard before an Administrative Law Judge (ALJ) on October 12, 2007.

In addition to documents about his compensation from RTA—which generally confirmed what Dosdall disclosed in the August 4 questionnaire—Dosdall submitted documents describing the duties of RTA board members. Briefly put, the documents provide that RTA board members are responsible for setting RTA financial and administrative policy. (Tr. at 67, 86, 95-99, 111-116.)

The ALJ issued a decision on January 22, 2008. Pursuant to the regulatory scheme, the ALJ examined whether the work Dosdall did for RTA was both "substantial" and "gainful." As the corporate directorship required significant mental activity, the ALJ reasoned, that work was substantial. (Tr. at 10.) The ALJ then turned to the question of whether the work was gainful, focusing on the amount of compensation Dosdall received.

The ALJ reasoned that the work Dosdall performed was clearly worth the amount he was paid. In support of this finding, the ALJ observed that Dosdall was paid a comparable amount before and after his impairment. The ALJ further determined that, because Dosdall had earnings over the regulatory guideline amount, the earnings were gainful. The ALJ thus concluded that Dosdall had engaged in substantial gainful activity, which precluded a finding of disability. (Tr. at 12-15.)

Dosdall appealed to the SSA Appeals Council, which denied further review. (Tr. at 2.) Dosdall then commenced the current action for judicial review.

3

## II. DISCUSSION

### A. Standard of Review

The parties do not dispute that, when reviewing the findings of the ALJ, the question is whether those findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quotation omitted).

When assessing whether there is substantial evidence, a court must consider evidence that supports, and that which contradicts, the factual findings of the ALJ. *Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). Those findings are not subject to reversal just because substantial evidence may also support another outcome. If it is possible to draw differing conclusions from the record, but one of those conclusions supports the findings by the ALJ, those findings must be affirmed. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

### B. Reopening Benefits Determination

Dosdall argues in part that the SSA did not have cause to reopen its decision to grant him disability benefits. He contends that, pursuant to the relevant regulations, the decision to reopen must be supported by "new material evidence," and that there was no such evidence here. The Commissioner counters that the decision to reopen is not subject to judicial review, but even if it was, there was new material evidence that justified reopening.

When a claimant seeks judicial review of a claim for social security benefits, the scope of review is controlled by 42 U.S.C. § 405(g), which provides in relevant part,

> Any individual, after any final decision of the Commissioner of the Social Security Administration made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .

This statute limits judicial review to final decisions. For example, where a claimant petitions for the reopening of an application for benefits, the denial of the petition is not a final decision and thus is not subject to judicial review. *Califano v. Sanders*, 430 U.S. 99, 108 (1977); *Robbins v. Sec'y of Health & Human Servs.*, 895 F.2d 1223, 1224 (8th Cir. 1990) (per curiam).

This Court is not persuaded that reopening, in any circumstances, can be characterized as a final decision. Reopening is a prelude to further consideration on the merits. So when the SSA decides on its own initiative to reopen a claim, this decision is not a final decision and it is not subject to judicial review.

Assuming strictly for the sake of argument that judicial review were permitted, Dosdall still cannot prevail. His position is that, when he first applied for benefits, he informed the SSA that he was a board member of RTA. But there is no documentation showing that he did so, and other evidence indicates that the SSA did not learn about the board membership until 2006. On this record, there was reasonable evidence suggesting that Dosdall did not previously disclose his board membership. So the ALJ had substantial evidence to conclude, in light of this apparently new information, that the claim could be reopened.

### C. Substantial Gainful Activity

The parties primarily dispute whether Dosdall performed substantial gainful activity for RTA. If so, then he is not disabled. 42 U.S.C. § 416(i)(1)(A); *Andler v. Chater*, 100 F.3d 1389, 1392 (8th Cir. 1996). To assess whether a claimant has engaged in substantial gainful activity, the inquiry is whether certain activity is both "substantial" and "gainful." 20 C.F.R. § 404.1572; *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996).

### 1. Substantial Activity

An activity is substantial if it involves significant physical or mental activity, even if that activity is performed on a part-time basis. 20 C.F.R. § 404.1572(a); *Reeder v. Apfel*, 214 F.3d 984, 989 (8th Cir. 2000).

Regarding whether Dosdall engaged in substantial activity, the record indicates that RTA board members set administrative and financial policies. And Dosdall had served on the board since 1987 and was most recently reelected to the board in 2006. In these circumstances, there is reasonable evidence to show that when Dosdall performed his duties for RTA, he was engaged in significant mental activity. For this reason, the ALJ had substantial evidence to conclude that Dosdall engaged in substantial activity.

Dosdall counters that his work was insignificant. He contends that he attended meetings for only two hours or less each month, and during those meetings, most of the work was done by other board members. Although substantial evidence might support this outcome, there is also substantial evidence to support the outcome reached by the ALJ. So there is no reason to reverse the findings of the ALJ on this point.

### 2. Gainful Activity; Presumption

An activity is gainful when it is done for pay or profit, regardless of whether the claimant actually realizes a profit. 20 C.F.R. § 404.1572(b); *Comstock*, 91 F.3d at 1145.

If the claimant is a corporate director, then the substantial gainful activity of that person is evaluated in the same manner as a person who is self-employed. 20 C.F.R. § 404.1006. To assess whether a self-employed claimant engages in substantial gainful activity, it is enough that the claimant meets one of three standards under 20 C.F.R. § 404.1575(a)(2). The regulation provides in relevant part,

(i)     . . . You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive substantial income from the business. . . .

(ii)    . . . You have engaged in substantial gainful activity if your work activity . . . is comparable to unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(iii)   . . . You have engaged in substantial gainful activity if your work activity, though not comparable to that of unimpaired individuals, is clearly worth the amount shown in [the employee earnings guidelines] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

The ALJ found, under the first standard, that Dosdall did not render significant services; and under the second standard, that there were no unimpaired individuals in the community who made RTA board membership their livelihood. The parties do not contest that Dosdall did not meet these standards. In accordance with the ALJ's ruling, the parties' arguments focus on the third standard, whether Dosdall received pay in excess of the earnings guideline.

The guideline appears at 20 C.F.R. § 404.1574(b)(2), which outlines the level of earnings that "will ordinarily show that [the claimant] has engaged in substantial gainful activity." For post-2000 earnings, that level is supplied by a formula, and so particular dollar amounts are not stated in the regulation. But the parties do not dispute that the SSA, and the ALJ, accurately set out the monthly amounts for 2003 through 2006: $800 in 2003, $810 in 2004, $830 in 2005, and $860 in 2006. *See* Social Security Administration, "Substantial Gainful Activity," at http://www.ssa.gov/OACT/COLA/sga.html (last modified Oct. 15, 2009).

Because § 404.1574(b)(2) states the amounts that "ordinarily show" substantial gainful activity, the regulation implies there may be extraordinary circumstances where compensation

7

over the amounts is not substantial gainful activity. Consistent with this implication, the Eighth Circuit has ruled that earnings over the guideline amount only create a rebuttable presumption of substantial gainful activity. *Thompson v. Sullivan*, 928 F.2d 276, 277 (8th Cir. 1991) (analyzing a substantially similar predecessor of the current regulation).

If a claimant does not perform meaningful work, and compensation appears to be "charity rather than payment for services," then earnings over the guideline will not establish substantial gainful activity. *Thompson*, 928 F.2d at 277. But where a claimant performed ordinary work for compensation over the guideline, without receiving special accommodation from the employer, there is substantial evidence for an ALJ to conclude that the claimant was engaged in substantial gainful activity. *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006).

The record indicates that Dosdall received compensation in excess of the guideline, and therefore, the ALJ could presume that he was engaged in substantial gainful activity. There is no evidence showing that this compensation was charity or that it did not reflect the value of what Dosdall performed for RTA. As the ALJ correctly observed, Dosdall's impairment did not affect the amount RTA paid him. In these circumstances, the ALJ had substantial evidence for finding that the activity was gainful.[1]

Dosdall contends that there is evidence to overcome this presumption, implying that his compensation overstated the value of his services. This argument is founded on Social Security Ruling 83-34 and an ensuing regulation that codified the ruling.

In the ruling, the SSA held that self-employment income is not always reliable because it may include distributions of profits: "A person who is incapable of rendering valuable services

---

[1] The record implies that, in the course of his efforts to obtain disability benefits, Dosdall may have believed his health insurance was not compensation. But the SSA does not distinguish health insurance from cash compensation, 20 C.F.R. § 404.1041(d), and the parties here have not disputed that health insurance benefits are a form of compensation.

8

may receive a large income solely because of his or her capital investment in the business." This principle is reflected in 20 C.F.R. § 404.1575(a)(2), which notes that income may be inflated by factors like "capital investment and profit-sharing agreements."

To succeed with this argument, Dosdall must present evidence suggesting not only that RTA paid him more than his services were worth, but also that the remaining compensation was a distribution of profits or prior capital investment. But there is no evidence to support either of these contentions. To the contrary, the record shows that RTA is a nonprofit corporation. (Tr. at 78.)

To summarize, the ALJ had substantial evidence to determine that Dosdall, in the course of his duties for RTA, engaged in substantial gainful activity. The ALJ's decision is properly affirmed, and this Court recommends that the parties' motions for summary judgment be decided accordingly.

## III. CONCLUSION

Being duly advised of the all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Dosdall's motion for summary judgment (Doc. No. 6) be **DENIED.**

2. The Commissioner's motion for summary judgment (Doc. No. 8) be **GRANTED.**

3. This litigation be **DISMISSED WITH PREJUDICE.**

Dated this 19th day of April, 2010.

    s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **May 5, 2010**. A party may respond to the

objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.